HELEN F. WOODBRIDGE, as Substituted Trustee of the Estate of SAMUEL FREEMAN, Deceased, Appellant, *v.* AUGUSTUS BOCKES, Respondent.

*Woodbridge* v. *Bockes,* 59 App. Div. 503, affirmed.
(Argued February 19, 1902; decided April 1, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 15, 1901, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was instituted by the plaintiff, as a substituted trustee under the will of Samuel Freeman, deceased, to compel her predecessor in the trust, the trustee named in the will, to account for the moneys and property of the trust estate and to pay over such as he may be found chargeable with. A trial was had and findings were made by the trial court, from which the following facts are extracted, as those material to the narrative of the case. Samuel Freeman died in December, 1870 ; leaving a last will, of which the defendant was constituted sole executor and trustee. He gave his residuary estate to the defendant, as executor, in trust to apply the income thereof to the use of the testator's daughter, this plaintiff, during her life, " not, however, to exceed in the aggregate the annual sum of $3,500." Upon the decease of his daughter, he gave the trust fund and property to her child, or children, and in case no child, or descendant of any

child, should survive her, he directed that they were to go to his next of kin and heirs at law. He further authorized his daughter to dispose of one-half of the trust estate by her will. He fixed the compensation of the trustee at $500.00 annually.

The plaintiff was the testator's only child and, at the time of his death, she was married to Rev. John Woodbridge and had two children; who are now surviving and who, with one child recently born to one of her children, are her only descendants. The defendant qualified as executor and trustee of the will; but he allowed the plaintiff's husband, under her sanction, to retain the securities of the estate and to manage the same, until June, 1872, when he executed and delivered to Mr. Woodbridge a general power of attorney to use, manage and control the properties held in trust. This instrument recited that it was executed with the approval of the plaintiff and it contained a further writing, signed by her, wherein she "sanctioned, ratified and approved" the appointment of Mr. Woodbridge as defendant's attorney and declared that "the said John Woodbridge is to be deemed also my agent and attorney in all matters and things done and to be done and performed under said power of attorney." From that time on, the business of the estate was conducted by Mr. Woodbridge, with the plaintiff's knowledge and approval, until September, 1889; at which time all the real estate included in the trust was made over to the plaintiff, individually. At the same time, the plaintiff and her two children, who were then of full age, executed a release, under their seals, to the defendant, "reciting the fact that the defendant had nothing to do with the estate personally and that it had been managed exclusively by John Woodbridge as agent, and by which the plaintiff and her two children ratified and confirmed all the acts of the said John Woodbridge and absolutely released the defendant from any claim or demand, that they, or either of them, may, or might, have against him by reason of his acts as executor or trustee, or otherwise, and also agreed to indemnify and save him harmless from any liability by reason of any acts of John Woodbridge." "These releases were executed freely and voluntarily by the plaintiff

and her two children    *    *´    *    with full knowledge of all the facts and without any fraud, actual or constructive, or misrepresentation of any character on the part of the defendant." None of the estate, real or personal, is now in the hands of either the defendant, or of Mr. Woodbridge; the real estate being all held by the plaintiff and the personal estate having been in the possession of the plaintiff and of her husband, as her attorney, since 1872. The defendant "has accounted for the property of the estate, as well as the nature of the case would admit" and he has not at any time, "taken, accepted or retained to his own use any property, funds or money belonging to the estate." The plaintiff and her husband, with their two children, from 1872 until about 1894, resided upon property at New Brunswick, N. J., purchased at a cost of $50,000, with the funds of the estate; the title to which is in the plaintiff. "The plaintiff was fully aware of the steps taken by her husband in purchasing said property and using the trust funds for that purpose and for the support of the family, and the plaintiff acquiesced in and united with her husband in such disposition of the funds." The New Brunswick property, "which was so occupied by the plaintiff and her family, was large and expensive, and the family lived in expensive style with servants, horses, carriages, etc., and the income of the estate was not sufficient for this style of living." The plaintiff "in such manner has largely overdrawn her annuity of $3,500 per annum, and there is nothing due or owing from the defendant, or from the trust estate, to her on account thereof." In 1894, the plaintiff had herself appointed "as substituted trustee in the place and stead of the defendant."

The trial court, also, found, as facts, that the plaintiff has had possession and control of the property and effects of the estate "and holds the same, or, if at all disposed of, misappropriated, or wasted, such disposition has been caused, permitted, sanctioned and approved by the plaintiff in her own use and enjoyment thereof." "If any deficit exists in the funds of said estate, the same has been caused and brought about by the plaintiff herself, or by and through her acquiescence, approval and participation, and is represented by the indebtedness owing by the plaintiff to said estate, $50,000 of

which was invested in the New Brunswick property, the title to which is in the plaintiff's name, and interest thereon, amounting to over $40,000, all of which is unpaid, and by other property, or the proceeds thereof, all of which went into the possession of plaintiff, or of her husband as agent, with her consent, or was disposed of with her knowledge, sanction and approval." " If the plaintiff would account to and pay over to the estate the funds which she has appropriated, or participated in appropriating, to her own use and purposes, and her indebtedness to said estate, * * * this would fully meet and answer all and any alleged deficit or devastavit charged or claimed to exist herein."

Upon the above facts judgment was directed to be entered against the plaintiff, dismissing her complaint, and that judgment has been unanimously affirmed at the Appellate Division, in the fourth department.

It appears that Dr. Freeman, the testator, resided, at the time of his death, at Saratoga Springs in this state; as did, also, the plaintiff, with her husband, who was a Presbyterian clergyman, until 1872, when they purchased the residence in New Brunswick, N. J. It appears, also, that the defendant had filed an inventory of his testator's estate, in January, 1871, which showed that the personal estate amounted to upwards of $150,000, and that the real estate was of uncertain value.

The substitution of the plaintiff, as trustee under Dr. Freeman's will, in 1894, was effected through a proceeding upon the petition of the plaintiff and of her children, in which the defendant united; which requested the court to accept the latter's resignation as trustee and to appoint the plaintiff as trustee in his place. The order upon the petition permitted the defendant to resign without an accounting.

*Appleton D. Palmer* for appellant.

*John L. Henning* for respondent.

GRAY, J. Doubtless, the general rule in equity would require a trustee to account to his *cestui que trust* in a proper case, and would require of him, when laying down his trust,

upon a proper demand, to render an account of his management of the estate confided to him. The application of the rule, however, is complicated with such extraordinary facts, in the present case, as to make its enforcement questionable. The proceeding is in a court of equity and whether it will exercise its equitable jurisdiction, and grant the relief prayed for, will depend upon the facts, as well as upon the application of legal principles. The above facts, as they are established for us by the unanimous affirmance of the judgment of the Appellate Division, exhibit the parties to this action in a situation which is creditable to neither. As to the defendant, he is shown to have been unmindful of the trust and personal confidence reposed in him by his testator and to have neglected the duties devolved upon him by the will; the performance of which he assumed by qualifying as executor. Instead of preserving and managing the trust properties, as directed, he permitted the same to pass into the possession of, and to be used by, the plaintiff and her husband. This, necessarily, subverted the testator's testamentary scheme; for his intention, in appointing the defendant as his executor and the trustee of his residuary estate, was to prevent the trust estate from being controlled by his daughter, and, necessarily, of course, by her husband. It was to be cared for by the defendant during the plaintiff's life and the income, to a certain amount, only, was to be applied for her benefit. Upon her death, it was to go to her children, or descendants; or, failing such, to the testator's next of kin and heirs at law. The defendant, though chargeable with no actually dishonest dealings with the trust property, was, nevertheless, unfaithful to his testator's instructions and, therefore, in the eye of the law, delinquent to his trust. Although he may have been released from accountability by his cestui que trust and by her children, the remaindermen, he finds himself in a situation, where he will be incapable of responding to possible demands of contingent remaindermen for the trust estate, in the event of the failure of plaintiff's children to survive her.

As to the plaintiff, there are several considerations, which render her situation, as a complainant in the action, one which neither appeals to the conscience of a court of equity, nor

inclines it to strain any rule of law in her favor. As the *cestui que trust*, it was, manifestly, improper and incompatible with her relation to the estate, that she should be appointed the trustee. (115 N. Y. 346–357; 147 ib. 560–568.) Having secured from the defendant the possession and the control of the trust properties, soon after her father's death, and having, thereafter, managed them, personally, or through her husband as her appointed agent, she wasted the estate in illegal investments, or in a mode of living beyond that which her rightful income warranted. When, after the lapse of some twenty-seven years of this course of conduct and when, after having released the defendant, some ten years before the action, as far as she and her children could do so, she demands that he now account for the trust estate and that he pay it over to her, in her new capacity, her demand comes with an ill grace. When she sought, and obtained, his resignation as trustee and her own appointment as trustee, in his place, no accounting was required, or ordered, on his part. When instituting this action, she does not make herself a party individually, as *cestui que trust*. (See Perry on Trusts, secs. 875, 876; *Sherman* v. *Parish*, 53 N. Y. 483, 490; *Vetterlein* v. *Barnes*, 124 U. S. 169.) Furthermore, such time has elapsed as to make it difficult for the defendant to render any account, under the circumstances.

These are considerations, which must militate against the plaintiff's right to maintain her action. It is no absolute right. It is one which should be accorded upon principles of equity, alone. It may be lost by operation of an estoppel through acquiescence, as it may by release ; or the circumstances may be such as, either to make an accounting unnecessary, or one improper to be decreed. (See Perry on Trusts, sec. 849; *Sherman* v. *Parish*, 53 N. Y. 483–492; *Butterfield* v. *Cowing*, 112 ib. 486–492; *Matter of Niles*, 113 ib. 547–559; *Brice* v. *Stokes*, 11 Vesey, 319; *Walker* v. *Symonds*, 3 Swanst. 1–64; *Nail* v. *Punter*, 5 Sim. 555; *Chillingworth* v. *Chambers*, L. R. [1 Ch. 1896] 685, 699, 707.) If it is just and equitable that the defendant should be required to account to the plaintiff, he will be so directed ; but not otherwise. The matter is exclusively one coming within the domain of equity.

It is true that the plaintiff is suing in her capacity as trustee, alone; but the court will look through the form of the proceeding, at the substance of the matter. It will consider whether the facts disclosed are such as to justify her, in any aspect, in appealing to the exercise of its equitable powers. Representing herself as the *cestui que trust*, she is without right to hold the defendant to account; for she not only has authorized, and acquiesced in, the breach of his trust, in complaisantly surrendering the control and management of the trust properties to her or to her husband, as her agent, but she is found to have what trust properties there are. She has, individually, released the defendant from all liability by reason of his executorship and trusteeship and she is, herself, liable to the trust for the trust properties which she has received and used. (Perry on Trusts, sec. 669; *Chillingworth* v. *Chambers*, *supra*.) Of course, it follows that she has no possible claim for any accrued income of the trust. It is not a question of any alienation by the beneficiary of her interest. It is whether she can make the defendant account for the income of the trust, when she has received, and is liable for, the trust fund. Directly, or indirectly, she received the whole of it, as it is found, and the defendant has accounted as well as the nature of the case permitted.

She cannot demand an accounting in the right of her children, in whom, by the terms of the will, the residuary estate has vested as the remaindermen; because, when of full age, they joined with her in releasing the defendant and the instrument of release is found to to have been voluntarily executed by them, as by her, without any fraud, or misrepresentation, and with full knowledge of all the facts.

What right has she to call him to account? By an impersonal right? But that means that, notwithstanding her complicity in the course which has led to this result, if disastrous to the trust, she may be recognized in her assumed office of trustee and may be accorded a right, which, personally, she has forfeited, morally, as well as legally. That cannot be. However separate the office and the individual, a court of equity cannot, and should not, grant to the former what the incumbent is unfit to be trusted with. Herein is the flaw,

which deprives the plaintiff's assertion of an equitable right of any force.

Is she in any position to maintain the action in the right of the infant descendant, as a contingent remainderman; which is the only possible theory, under the circumstances? That the court might, in a proper case, require the defendant to account for, and to make good, the wasted trust estate, in order that it may be preserved for the contingent remainderman, may be true; but this is not a case where it is necessary to decide that question. The plaintiff may represent the trust estate; but she does not represent the remaindermen. She is not their trustee and they are not represented in court. She is the *cestui que trust* and, as such, she has had the whole trust estate, directly, or indirectly, and is liable for it. The court might well deny the prayer of plaintiff's bill of complaint, by reason of the impropriety of her acting in the double capacity of *cestui que trust* and of trustee; as by reason of her being equally liable with the defendant upon the demand of a contingent remainderman to account for the estate, in the event of the failure of her children to survive her. If she cannot maintain it for herself, or for the present remaindermen, by reason of their acts, I perceive no equitable principle, upon which she might maintain it upon the fiction that she is proceeding in behalf of contingent remaindermen.

However inexcusable the defendant's acts as trustee may be, he should not be held to account to one, who has induced the commission of his illegal acts; who has acquiesced in his violation of the trust; who, individually, is answerable for the wasted estate and who, having acquiesced in the discharge of the defendant without a direction to account, after the lapse of years brings such an action. The plaintiff's demand is repugnant to equity.

The conclusion I reach is that the judgment should be affirmed, with costs, and that our order shall state that the determination in this action shall be no bar to, nor authority against, the maintenance of any action, or proceeding, by or in behalf of, the contingent remaindermen, as may be advised, to secure their rights, or interests, in the *corpus* of the trust fund.

BARTLETT, J. (dissenting). I cannot vote to affirm the judgment below. The facts, as settled by a unanimous decision of affirmance, require the intervention of a court of equity.

Samuel Freeman died in Saratoga Springs in December, 1870, leaving a will appointing defendant his executor and trustee; the defendant duly qualified. The will provided that the income of the residuary estate should be paid to the plaintiff, his daughter, with a limitation not now important, and at her death the trust fund " to go and belong to her child, or children or descendant," and in default of any to " go and belong to the next of kin of testator." The daughter was given the power to dispose of one-half of the trust fund by will.

The residuary personal estate was about $100,000 and the real estate about $10,000.

The plaintiff was the only child of testator and the wife of a clergyman; at that time she had two children who still survive; recently a child was born to one of said children. The defendant never took possession or charge of the assets of the estate, but allowed the husband of testator's daughter, under oral authority, until June 28th, 1872, to retain the securities of the estate and manage the same. On the last-mentioned date defendant gave a written power of attorney to the daughter's husband to take possession of the property of the estate, real and personal, and manage the same.

The business of the estate was so conducted, with the daughter's consent, until September 12th, 1889, when she and her two children, the latter then of age, ratified the acts under the power of attorney and released defendant from liability. On the same day the defendant conveyed all the real estate included in the trust and acquired by deed, foreclosure or otherwise, to plaintiff individually. The plaintiff or her husband had been in possession of the real estate of the trust practically since testator's death.

The trial court finds the releases were executed freely, voluntarily and with full knowledge of all the facts, and without fraud, actual or constructive, on part of defendant; that no portion of the estate, real or personal, is in the hands of defendant or plaintiff's husband ; that $50,000 of the personal

estate has been invested in real estate in New Jersey and title is now in plaintiff as trustee or individually. Numerous facts are found in detail by the referee and the trial judge as to the manner in which plaintiff and her husband mismanaged and wasted the estate, real and personal, belonging to the trust, to which reference need not now be made.

.It appears that all the exhibits are not printed, and it was stipulated nevertheless that they could be read on argument of the appeal.

The Appellate Division in its statement of facts recites that at least since 1872 defendant did not take any active part in the management of the estate ; that it is conceded he has never accounted as executor or trustee, and that his accounts as such were never judicially passed upon by either court. It also appears in this statement, and in a general way in the findings of the trial judge, that on the ninth of June, 1894, on petition of plaintiff's children, the Supreme Court made an order accepting the resignation of defendant as executor and trustee and appointing plaintiff in his place.

On this state of facts the trial court dismissed the complaint, with costs, granting the defendant an extra allowance of $2,000. The Appellate Division unanimously affirmed the judgment, but struck out the provision for an extra allowance.

The conclusions of law by the trial judge were, in substance, that plaintiff ought to account before asking defendant to account *"for something which he never had;"* that the releases extinguish any cause of action of plaintiff, or her children, against defendant ; that the relation between the defendant and the beneficiaries of the trust was not that of trustee, but of life tenant and remaindermen ; that plaintiff is a debtor to the trust fund in a much larger sum than her income could possibly amount to, and if she could recover the trust fund she could apply no portion of it to her own use ; that plaintiff is not trustee for remaindermen, or contingent remaindermen, and is not charged with any active duty in their behalf ; that no action for *devastavit* can be maintained by the trustee, but only by the remainderman when his estate vests ; that the complaint should be dismissed.

A reference to the opinion of the Appellate Division is nec-

essary before stating my views as to the proper disposition to be made of this cause.

The learned judge who expressed the views of the court referred to these points, among others, viz. : That the appointment of plaintiff as sole trustee was incompatible with her position as *cestui que trust*, but her appointment cannot be attacked collaterally ; that it was the duty of the defendant to preserve the *corpus* of the estate, make it produce an income if practicable, and, although he was not an express trustee for the remaindermen, the law implies a trust in their favor, making it incumbent upon him to preserve the principal and account therefor at expiration of trust; that by statute every conveyance in contravention of a trust is void ; that as against the plaintiff individually and her children, upon the facts stated, the equities are all with the defendant ; that defendant while acting in good faith was guilty of a breach of trust ; that the principal breaches of trust occurred twenty-five years before the commencement of this action ; that assuming, without deciding the question that the trustee may maintain a suit for *devastavit* for the benefit of remaindermen, yet as to the contingent remaindermen, in view of the great hardship and injustice that would result to defendant, and considering also that plaintiff, if not wholly liable, is jointly liable with defendant to such remaindermen, it is proper for the court to withhold such relief and leave it to such contingent remaindermen should they ever take a vested interest, to redress the wrong for themselves ; that this action should have been brought by plaintiff individually as well as trustee, but issues raised by pleadings involve her rights individually and the decision binds her in each capacity ; that defendant cannot be required to restore the trust fund for the sole purpose of enabling plaintiff to receive her annuity in future ; that the doctrine of estoppel and *laches* applies to plaintiff and that to award her relief would permit her to receive a second time money that she once has had ; that the conclusions thus reached are not in conflict with the authorities holding that a trust may not be abrogated, that the beneficiary interest is not assignable, and that as against parties who are not innocent purchasers,

a beneficiary or trustee may disaffirm an act in contravention of the trust and recover the property.

I have endeavored, as briefly as possible, to make clear the precise position of the courts below. I wish to say at the outset that I have great sympathy for the learned and aged defendant, who has honestly, but mistakenly, allowed his heart to dominate his judgment in this transaction, extending over more than a quarter of a century. Nevertheless, it is the plain duty of this court to apply those familiar principles of equity that are clearly applicable to the amazing situation here disclosed, and see to it that a hard case does not make bad law.

I am of opinion that the undisputed facts require a court of equity to retain jurisdiction of the case and ultimately enter a decree adjudicating the rights and liabilities of all the parties.

The first error in the decision below is the determination that the contingent remainderman is not represented by the plaintiff as trustee, and that the latter owes him no active duty of protecting his interests.

The next error is, that assuming the trustee does represent the contingent remainderman, yet owing to the acts of the plaintiff in her individual capacity and the hardship of defendant's present position, a court of equity ought not to take jurisdiction, but leave the contingent remainderman to redress his own wrongs in an action brought at some remote period when his rights become vested and he is entitled to immediate enjoyment.

The fact is that this case has been practically decided as if it were a litigation between the defendant and the life tenant, individually, as sole beneficiary under the trust and entitled to the entire trust fund. The complaint has been dismissed for the reason that the plaintiff, individually, was estopped from making any claim against the defendant. It is quite possible that when a proper accounting is had the plaintiff, individually, may be placed in a position where, as between her and the defendant, she is not entitled to make any claim for income, but is liable to make good a large sum to the *corpus* of the trust.

The main difficulty is that the dual capacity of the plaintiff, while not overlooked, has been practically ignored. I agree with the Appellate Division that while the plaintiff sued as trustee, the issues framed, tried and decided involved her individual rights to some extent.

The trial court found that a child had recently been born to one of the plaintiff's children, and it was so stated on the argument, and appears in the briefs of both counsel, that the event happened since this action was commenced. The advent of this child had a most important bearing on this litigation, as there is now in being a person who may be entitled, ultimately, to the entire *corpus* of the trust fund, provided the plaintiff's children do not survive her; a person who is not bound in any way by the releases and various transactions found by the trial court.

It is the undoubted rule that a court of equity will not undertake to adjudicate the rights of possible parties in interest, not *in esse*.

The suggestion of respondent's counsel that the plaintiff should not be permitted to avail herself of any possible cause of action in favor of the contingent remaindermen who are at present uncertain and unknown, is contrary to the fact as well as to principle and precedent.

A contingent remainder in real estate is a vested right, descendible as property, by statute and at common law. (*Hennessy* v. *Patterson*, 85 N. Y. 91, 103.)

"Expectant future estates, as defined in the statute, do expressly include all remainders, whether vested or contingent." (*Moore* v. *Littel*, 41 N. Y. 66, 84.) They are, by statute, descendible, devisable and alienable. "In general it seems that contingent interests pass to the real and personal representatives, according to the nature of such interests, as well as vested interests, so as to entitle such personal representatives to them when the contingency happens." (Fearne on Contingent Remainders, 364; *Kenyon* v. *See*, 94 N. Y. 563, 568.)

In the case at bar, while the interests of the remaindermen are vested, their enjoyment is as much dependent upon contingencies as are the rights of the contingent remainderman.

The rights of all are property that the trustee is required to protect against that day when the lawful remainderman shall come to his own.

The intention of the testator may well be resorted to at this point. He made a will clear in scheme and legal in conception; he selected his executor and trustee with more than usual judgment and caution, naming an able jurist and lawyer to fill that responsible position. The defendant accepted the trust, thereby covenanting with the dead to carry out his testamentary provisions in letter and in spirit. The testator gave simply income to his daughter for life; he bequeathed nothing to her husband; he provided for the disposition of the residuary estate at his daughter's death to the last possible contingency, thus requiring the preservation of the *corpus* of the trust estate until the time of final distribution.

From the death of the testator, by a series of acts, the defendant has wrought the complete subversion of the trust, and the contingent remainderman has succeeded to a barren property right unless a court of equity can aid ·him now, while the actors in this suit, principals and witnesses, are living, to place in the hands of a responsible and vigilant trustee the wreckage of this trust estate if it can be discovered and rescued.

In *Western R. R. Co.* v. *Nolan* (48 N. Y. 517) this court said: "The trustees are the parties in whom the fund is vested, and whose duty it is to maintain and defend it against wrongful attack or injury tending to impair its safety or amount. The title to the fund being in them, neither the *cestui que trust* nor the beneficiaries can maintain an action in relation to it, as against third parties, except in case the trustees refuse to·perform their duty in that respect, and then the trustees should be brought before the court as parties defendant."

In the case at bar the defendant, as trustee, resigned by permission of the court, and the plaintiff, for the time being, at least, is the trustee upon whom rests the obvious duty of preserving the trust estate. (2 Pomeroy's Eq. Jur. [2d ed.] §§ 1065–7; *Upham* v. *Wyman*, 89 Mass. 502.) In the case last cited, the learned judge writing, said: "The court is bound to look beyond the rights of those immediately

39

interested in the subject-matter of the suit, and to take care that the trust fund is protected from loss, and preserved, as far as possible, unimpaired for those who will be ultimately entitled to it. A court of equity will not turn *cestuis que trust* in remainder over to the personal responsibility of a trustee, to obtain a remedy for his neglect or misconduct, or that of a tenant for life, when it has means of redress within its reach by which a trust fund can be restored or kept unimpaired."

This court in *Wetmore* v. *Porter* (92 N. Y. 76) held that it is no defense to an action brought by an executor as such, to recover assets of the estate in the hands of a defendant, or for the conversion thereof, that plaintiff in his individual capacity acted in collusion with the defendant in despoiling the estate; that whoever receives property knowing that it is the subject of a trust and has been transferred by the trustee in violation of his duty or power, takes it subject to the right, not only of the *cestui que trust*, but also of the trustee, to reclaim possession or to recover for its conversion.

Ruger, Ch. J., said (at page 85): "We see no reason why a trustee, who has been guilty even of an intentional fault, is not entitled to his *locus penitentiæ* and an opportunity to repair the wrong which he may have committed." Again (at page 82): "It is an alarming proposition to urge against the legal title which a trustee has to trust funds that his recovery of their possession may be defeated by a wrongdoer, upon the allegation that the lawful guardian of the funds colluded with him in obtaining their possession. * * * The dual character maintained by an individual who is also engaged in the administration of a trust involving the control and custody of another's property, is not only recognized by numerous decisions in the courts, but has also been the subject of frequent statutory enactments."

The fallacy of the holding by the trial court that the only relation existing between the trustee and the remaindermen was that of life tenant and remaindermen, is further demonstrated by the fact that the real estate in this trust has been conveyed, changes in investment have been made by strangers to the trust and the funds generally wasted.

It is true that, in case of a trust in real estate creating a life estate and remainder over, that on the falling in of the life estate no conveyance is necessary from the trustee to the remaindermen, as the office of trustee ceases and the title is transferred by operation of the statute. (*Matter of Livingston*, 34 N. Y. 555.) The rule has no application to this case, under its peculiar facts, and an active duty rests upon the trustee to rescue the estate. The fact that plaintiff's interest as trustee and individually are conflicting only makes clear the gross impropriety of the order appointing her the successor to the defendant in the trust.

I have reached the conclusion that when the Appellate Division decided that it was proper to withhold relief from the contingent remainderman and remitted him to a remote and uncertain remedy, against a trustee without assets, it was in conflict with the law that a trust may not be abrogated (*Douglas* v. *Cruger*, 80 N. Y. 15), and that as against parties who are not innocent purchasers, a beneficiary or trustee may disaffirm an act in contravention of the trust and recover the property. (*Sherman* v. *Parish*, 53 N. Y. 483; *Wetmore* v. *Porter*, 92 N. Y. 76; *First National Bank* v. *National Broadway Bank*, 156 N. Y. 459.)

The unqualified dismissal of the complaint should not be upheld, as this judgment is a stumbling block in the way of the contingent remainderman, even if it be assumed he is not technically bound by it. If affirmed by this court the judgment is a controlling authority against him.

The trial court was advised of the existence of the contingent remainderman, as it has found the fact, and it should have allowed the cause to stand over, on its own motion (Code of Civ. Pro. § 452), on such terms as were equitable, until the plaintiff brought in the contingent remainderman as a necessary party and properly amended her complaint.

The infant party ought to be represented by separate and competent counsel, who should not only submit his rights to the court, but affirmatively attack the order which accepted the resignation of the defendant as executor and trustee and appointed the plaintiff as his successor, and pray that it be set aside and a new trustee appointed; also pray that the

defendant, as executor and trustee, and the plaintiff, both as executor and trustee and individually, account for the *corpus* of the trust estate; also pray for personal judgments against them in favor of the estate for so much of the assets as have been wasted; also pray that any assets of the estate, real or personal, be conveyed and transferred to the new trustee to be appointed; also pray for such other relief as may be proper. In the present *status* of this estate the contingent remainderman is the only person who is not involved in the irregular transactions disclosed by the findings and in a position to rescue the trust estate, or recover judgments for the benefit thereof, if the assets are hopelessly wasted.

The judgments of the Trial Term and Appellate Division should be reversed, with costs to abide the event, a new trial ordered to take place and a general accounting to be had after the infant contingent remainderman is brought in as a defendant and issue joined, according to the directions contained in this opinion.

PARKER, Ch. J., HAIGHT and VANN, JJ., (and O'BRIEN, and MARTIN JJ., in result), concur with GRAY, J.; BARTLETT, J. dissents.

Judgment accordingly.