In the Matter of the Application of GRACE H. WENTWORTH, as Executrix of JOHN W. WENTWORTH, Deceased, Respondent and Appellant, to Compel FRED W. CLIFFORD, as Executor of HENRY L. ARMSTRONG, Deceased, Appellant and Respondent, to Render an Account of the Proceedings of HENRY L. ARMSTRONG, as Executor and Trustee under the Will of MARY E. ARMSTRONG, Deceased.

Trust — power in trustee to use part of principal for support of cestui que trust does not authorize conveyance of property to latter — if interest is inalienable by statute, prohibition cannot be circumvented by estoppel — statutory prohibition of transfer of right of life beneficiary not affected by authorization of trustee to apply, in his discretion, a part of the principal to support and maintenance — statute cannot be evaded by combination of interests of life beneficiary and remaindermen — repeal of statute — saving clause — sale of property in violation of trust — when trustee may be required to account.

1. A trustee who, by the terms of the trust, is authorized, in his discretion, to apply principal as well as income to the support and maintenance of the *cestui que trust,* cannot use such power as a cover for some other and unauthorized purpose and intent such as a conveyance of the trust property for his personal benefit or to enable the *cestui que trust* to secure the property freed from trust provisions.

2. When the statute prohibits alienation by the *cestui que trust* of his interest by direct conveyance, he cannot indirectly accomplish such alienation through estoppel by any consent which he might give to a conveyance by the trustee.

3. A trust to receive the income arising from real or personal property and apply it to the use of another is not withdrawn from the protection of the statute in force at the time the will was admitted to probate (L. 1896, ch. 547; § 83) forbidding transfer of the rights of the beneficiary, by the fact that the will gives an additional discretionary power to the trustee to add some principal to income when necessary to provide the desired support and maintenance.

4. Nor is the protection of the statute avoided by a clause therein permitting alienation in cases where the " beneficiary in a trust for the receipt of rents and profits of real property is entitled to a remainder in the whole or part of the principal fund so held in trust," where under no circumstances was the beneficiary of the trust entitled to a remainder in all or any part of the principal sum and the only manner by which the requirements of the statute could be satisfied was by a combination of the interests of the beneficiary and trustee directed toward a common purpose of escaping from the trust.

5. Before execution of the conveyance complained of in this proceeding, the provision of the statute permitting alienation was repealed and though the repealing statute (L. 1903, ch. 88) contains a saving clause that the repeal " shall not impair or affect any rights existing at the date of the passage," the beneficiary did not have, either directly under the will or indirectly through co-operation with the trustee, any remainder in trust which could possibly bring him within the description of the enabling statute.

6. Where by a will admitted to probate in 1901 a testatrix devised certain real property to her husband and directed him to sell the same and keep the proceeds invested " and pay over to my said brother from time to time as in his judgment his needs require the income thereof and such portions of the principal as he may think best from time to time to give him for his support and maintenance and personal needs and uses, and at his death to pay over to himself, my said husband, for his own personal use and enjoyment any unexpended portion of said fund thus held in trust by him for the benefit of my said brother," and the trustee in 1909, with the consent of the *cestui que trust*, conveys the real property, as a result of which the trust property was subsequently lost, such conveyance is a violation of the trust and the trustee may be required to account by the *cestui que trust* or his representative. (*Douglas* v. *Cruger*, 80 N. Y. 15, 20, followed; *Matter of Trumble*, 199 N. Y. 454; *Wells* v. *Squires*, 117 App. Div. 502; 191 N. Y. 529; *Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39, distinguished.)

*Matter of Wentworth*, 190 App. Div. 829, affirmed.

(Argued November 15, 1920; decided December 31, 1920.)

12

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 3, 1920, which modified and affirmed as modified a decree of the Chemung County Surrogate's Court directing an accounting of the proceedings of Henry L. Armstrong as trustee under the will of Mary E. Armstrong, deceased.

The facts, so far as material, are stated in the opinion.

*Martin S. Lynch* for Fred W. Clifford, as executor, appellant and respondent. The transfer of the property by Henry Armstrong to Lizzie W. Wright was *bona fide;* was made for the benefit of John Wentworth, and with his full knowledge, consent, approval, and at his request. His representative should be estopped from questioning its validity. (*Woodbridge* v. *Bockes,* 170 N. Y. 596; *Sherman* v. *Parish,* 53 N. Y. 483; *Butterfield* v. *Cowing,* 112 N. Y. 486; *Vohmann* v. *Michael,* 185 N. Y. 420; *Ungrich* v. *Ungrich,* 131 App. Div. 24.) Under the statutory law which was applicable to the trust created by the will of Mary E. Armstrong, deceased, Henry L. Armstrong and John W. Wentworth were authorized to terminate the trust. (*Snedekir* v. *Congdon,* 41 App. Div. 433; *Metcalf* v. *Union Trust Co.,* 181 N. Y. 29; *Matter of Travis,* 9 Misc. Rep. 621.)

*Powell Crichton* and *B. L. Newman* for petitioner, respondent and appellant. The petitioner is entitled to the income from the trust fund and such an allowance out of the principal as would have been sufficient to support her testator from the death of Mary E. Wentworth to the death of the testator. (*Matter of Hoyt,* 116 App. Div. 217; 189 N. Y. 511; *Doherty* v. *Thompson,* 167 N. Y. 472; *Collister* v. *Fassett,* 7 App. Div. 20; 23 App. Div. 466; 163 N. Y. 281; *Robinson* v. *Martin,* 200 N. Y. 159; *Cammann* v. *Bailey,* 210 N. Y. 19; *Forman* v. *Whitney,* 2 Keyes, 165; *Peck* v. *Smith,* 183 App. Div. 336;

*Matter of Stevens,* 20 Misc. Rep. 157; *Matter of Briggs,* 180 App. Div. 752; *Gladding* v. *Follett,* 2 Dem. 58; *Matter of McCormick,* 22 Misc. Rep. 309.)   John W. Wentworth in his lifetime was not, and his executrix is not now, estopped from claiming that the trustee is liable for breach of trust. (*Hamlin* v. *Stevens,* 177 N. Y. 39; *Livingston* v. *N. Y. L. Ins. Co.,* 13 N. Y. Supp. 105.)

HISCOCK, Ch. J.   By these appeals we are required to pass upon the obligations of one Armstrong, now deceased, as trustee of one Wentworth, also deceased.   It is claimed in behalf of the *cestui que trust* and thus far has been held that the trustee in violation of his trust executed a conveyance of real estate which was the subject thereof and as a result of which said trust property was subsequently lost, and that now the trustee should be required to account therefor.   The claims in behalf of the trustee are first that he was authorized by the terms of the trust to execute the conveyance which he did and second that the *cestui que trust,* who was of age and competent, so consented to the conveyance that those now representing him are estopped from questioning its validity.

The trust was created by the will of one Mary E. Armstrong, who was the wife of the trustee and the sister of the *cestui que trust,* she also leaving her surviving a mother and sister, whose survivorship is a fact of some materiality in the controversy which we have before us. As has already been stated the subject of the trust was an interest in real property which was situate in the city of New York.   The testatrix died and her will was admitted to probate in 1901, that date being of importance.

By the provisions of the will, so far as involved in this controversy, the testatrix devised to her husband, Armstrong, the real estate in question in trust to pay over two-thirds of the income thereof to her mother during life and on her death to sell the same and to retain the proceeds of one-fourth thereof in trust for the benefit of

the brother upon the terms " that he (the trustee) keep the same invested and pay over to my said brother from time to time as in his judgment his needs require the income thereof and such portions of the principal as he may think best from time to time to give him for his support and maintenance and personal needs and uses, and at his death to pay over to himself, my said husband, for his own personal use and enjoyment any unexpended portion of said fund thus held in trust by him for the benefit of my said brother." Then provision was made for the contingency that the husband died before the mother. It was provided that in such case his successor in trust should pay over the income of the net proceeds arising from the sale of the entire real estate to the mother during life and accordingly as the latter was survived by both the sister and brother of the testatrix or only by the brother, a half or all of the proceeds of said real estate should then be held in trust for the benefit of the brother as before provided, with remainder to the sister or the next of kin of the testatrix accordingly as the sister did or did not survive the mother. Said will also empowered the trustee to sell, mortgage or exchange said real estate whenever in his judgment the interest of the estate would be promoted thereby.

The trustee took possession of the real property and until 1909 continued to carry out the provisions of the trust. In January of that year, as has been found, he " as such trustee conveyed said real property * * * to Lizzie C. Wright (sister of the testatrix) said deed reciting a consideration of $60,000 and * * * conveys all the estate in the premises ' which the party of the first part has or has power to dispose of, whether individually or by virtue of said will or otherwise.' " At this time the mother was not dead and the trustee at most had a remainder in the property subject to be divested should he predecease her. Subsequently and in accordance with what we may assume was a general plan the grantee in

that conveyance executed a mortgage on the premises for $40,000, which was subsequently foreclosed and the property wiped out. Figures have been found which we do not understand to be disputed, if the theory of the representatives of the *cestui que trust* is correct, that his interest in said property on the basis of the purported purchase price after providing for certain mortgages, taxes, etc., was $13,185.75. He received from his trustee nothing on account of this transfer and if the action of the trustee was legal the trust fund was entirely lost by the transfer and subsequent foreclosure of the mortgage.

The surrogate found that the *cestui que trust* did not in any manner request or consent to this transfer or to the mortgage subsequently executed upon said property, but the Appellate Division upon evidence which we think authorized it to take such view reversed these findings and affirmatively found that said *cestui que trust* " consented to the sale, the execution of the mortgage and the disposition of the moneys raised thereby, and acquiesced in an arrangement whereby one-fourth of the parcels conveyed, or the proceeds therefrom should be held by the grantee for his benefit, or used for or paid over to him in lieu of its retention by the grantor, under the terms of the trust created for his benefit by the will."

We thus come to a consideration of the reasons already referred to which it is urged made the conveyance by the trustee of the trust property valid and effective and relieved him of any further responsibility on account thereof.

It is said that the trustee had the right to make this conveyance because under the terms of the trust he was authorized, in his discretion, to apply principal as well as income to the support and maintenance of the *cestui que trust* and that the conveyance is to be regarded as having been made in the execution of that power. It may, of course, be conceded that the trustee might have disposed

of the trust property for the purpose of paying to the *cestui que trust* such portions of the principal as he might think best from time to time to give him " for his support and maintenance and personal needs and uses " as in the will provided. But it is equally true and obvious that the trustee could not use this power, confided for the purpose specified, as a cover for some other and unauthorized purpose and intent. He could not use it for instance, as a cover under which to make a conveyance of the trust property for his personal benefit or to enable the *cestui que trust* to secure the property freed from trust provisions in order that he might embark upon a course of dealing with it which was not authorized by the will.

As we interpret them there is amongst the findings none to the effect that the *cestui que trust* at the time this conveyance was made needed the principal of the trust fund for his support and maintenance or that the conveyance was made to accomplish any such purpose. The trial court expressly refused to find that the *cestui que trust* needed a certain specific sum per month and the fact that out of this conveyance by the trustee not a dollar was realized for the benefit of the *cestui que trust* would seem to be a pretty conclusive argument against the proposition now being considered.

We are not entitled to scan the evidence for the purpose of inferring additional findings as a basis for reversal of the decree rendered. But if we were and should examine the testimony in the light of the very argument made by the appellant's counsel, we should conclude that the purpose of the execution of the conveyance was to effectuate a plan by the trustee, the *cestui que trust* and his sister to buy out the trustee, and to free the property from the trust provisions to the end that the *cestui que trust* and sister might embark upon a program of more or less speculative treatment of the property which it was hoped would realize greater proceeds and greater returns than could be secured by a compliance with the trust.

The remaining proposition is the one that because the *cestui que trust* consented to and acquiesced in this conveyance of the trust property he and his representatives were and are estopped from complaining thereof. This proposition involves the consideration of several elements.

We are all agreed upon what seems to be an obvious view that if the interest of the *cestui que trust* in and under this trust was by statute inalienable, the prohibition of the statute could not be circumvented by any process of estoppel. If the statute prohibited alienation by the *cestui que trust* of his interest by direct conveyance he could not indirectly accomplish such alienation by any consent through estoppel which he might give to a conveyance by the trustee. None of the cases cited by the appellant for the proposition that he could do so upholds any such view as applicable to this accounting. The cases in this court which he cites (*Woodbridge* v. *Bockes*, 170 N. Y. 596; *Sherman* v. *Parish*, 53 N. Y. 483; *Butterfield* v. *Cowing*, 112 N. Y. 486; *Vohmann* v. *Michel*, 185 N. Y. 420) are those where a court of equity has refused to approve the inequitable attempt of a *cestui que trust* to hold a trustee personally responsible for doing what he himself had asked, or where under peculiar circumstances, and sometimes in cases of trusts unlike the present one, the court has refused to disregard the conduct of the *cestui que trust* and hold the trustee responsible for some feature of mere mismanagement. On the contrary, the principle that estoppel may not be employed as a means of accomplishing the violation of a statute in the case of a trust is expressly recognized in *Douglas* v. *Cruger* (80 N. Y. 15, 20).

We thus come to the underlying question whether the interest of the *cestui que trust* in this particular trust was by statute inalienable, when the conveyance was executed in 1909. As has already been stated, the will which created the trust was admitted to probate in 1901. The statute then in force and which regulated the effect of

the will provided: " The right of a. beneficiary of an express trust to receive rents and profits of real property and apply them to the use of any person, can not be transferred by assignment or otherwise, but the right and interest of the beneficiary of any other trust in real property may be transferred." Practically the same provision existed in respect of a trust to receive the income of personal property and apply it to the use of any person. There was, however, the futher provision modifying the one quoted to the effect that " Whenever a beneficiary in a trust for the receipt of rents and profits of real property is entitled to a remainder in the whole or part of the principal fund so held in trust subject to his beneficial interest for a life or lives, or a shorter term, he may release his interest in such rents and profits, thereupon the estate of the trustee shall cease in that part of such principal fund to which such beneficiary has become entitled in remainder, and such trust estate merges in such remainder." A similar provision also existed in respect of trusts of personal property.

It has been questioned whether the trust before us comes within the definition of those trusts which are made inalienable by the statute which has been quoted. This doubt springs from the fact that the trust was not purely and simply one to collect rents and profits and pay over to the beneficiary for his support and maintenance, but also conferred upon the trustee a power in his discretion to apply portions of the principal if in his judgment necessary to such support and maintenance. It has been thought that this may have changed the nature of the trust and withdrawn it from the prohibition of the statute. I do not agree with this view. The primary, fundamental and obligatory trust is simply and solely the one to collect and pay over rents and profits. That was the only trust which the beneficiary could enforce. As a merely auxiliary and incidental feature the trustee was authorized to secure the fundamental purpose of the

trust — support and maintenance of the beneficiary — by using some of the principal if he deemed it necessary. But as has been said this was purely a discretionary privilege which could not be enforced and might never be executed.

The purpose of the testatrix was to create a trust for the support and maintenance during life of a relative to whom, for various reasons appearing in the evidence, she could not make a devise of the principal. The purpose of the statute as has been stated over and over again was to permit a testator thus to make secure provision for the support and maintenance of an improvident person for life and to place it beyond the reach of such person or his creditors to defeat the purposes of the trust by alienating and squandering the principal. It seems to me that we should be reaching out in an attempt to avoid the purposes of this legislation, which has been deemed to be wise, if we should hold that a trust which in its fundamental purposes is clearly within the statute was nevertheless withdrawn from the protection thereof because of this additional, incidental discretionary power to add some principal to income when necessary to provide the desired support and maintenance.

No case has been found passing directly upon this point, and it seems to be a matter of significance that with all of the efforts which have been made during a long series of years by spendthrift beneficiaries and persistent creditors to withdraw trust property from the provisions of the statute against alienability, no decision has been secured upholding the view now advanced.

The cases which have been referred to as tending to uphold the suggested view are as a matter of fact clearly and decisively distinguishable from the present one. In each of them the trust under consideration provided for fixed obligatory payments to the beneficiary which drew upon principal as well as income and was in no fair sense a trust within the provisions of the statute which we have

quoted. (*Matter of Trumble*, 199 N. Y. 454; *Wells* v. *Squires*, 117 App. Div. 502; affd., on opinion below, 191 N. Y. 529.)

But even though the present trust came within the primary provisions of the statute against alienability, it is further urged that this effect was avoided by the clause permitting alienation in cases where the " beneficiary in a trust for the receipt of rents and profits of real property is entitled to a remainder in the whole or part of the principal fund so held in trust, subject to his beneficial interest," etc., and which clause also prevailed in the case of trusts of personal property. I am not able to concur in this view either.

In the first place it may be doubtful whether this clause describes the situation which is presented to us. Under no circumstances was the beneficiary of this trust entitled to a remainder in all or any part of the principal sum. The trustee had a remainder which at best was a vested one subject to be divested by his death before the death of the mother of the testatrix. But I should suppose that the requirements of the statute permitting alienation could not be satisfied by a combination of such rights of the trustee with the life interest of the beneficiary. I should not suppose that the statute having prescribed inalienability as the primary provision and then having made a certain exception would be complied with, not by a union in the beneficiary of the interests therein described but by a combination of the interests of the beneficiary and the trustee directed towards a common purpose of escaping from the trust. But however this may be there seems to be another complete answer to this present contention.

In 1903, and before execution of the conveyance under consideration, the provision of the statute just referred to permitting alienation was repealed. The right and intent of the legislature to apply this repeal to existing statutes is indicated and measured by the saving clause

in the repealing statute. The case is quite different than that of *Metcalfe* v. *Union Trust Company of N. Y.* (181 N. Y. 39), where it was held that the statute then under consideration might have been made retroactive but, under its language, was not to be interpreted as being so. Here the statute broadly repeals the power of alienation except as that power is preserved by the saving clause which provides that the repeal " shall not impair or affect any rights existing at the date of the passage, but the act hereby amended (the one permitting alienation) shall have the same force and effect with respect of such existing rights as though the amendatory act had not been passed."

The question thus becomes whether at the time of the repeal the beneficiary in the present trust had any right to effect an alienation which was saved by the statute, even if we assume that the present appellant could take advantage of rights so saved. It does not seem to me that he did.

At the time the repeal took effect this beneficiary did not have either directly under the will or indirectly through cooperation with the trustee any remainder interest which could possibly bring him within the description of the enabling statute. At the most he had the right to secure such remainder and then exercise a personal privilege of effecting alienation. No authority has been found that this indefinite, uncertain, inchoate possibility of creating conditions upon which he could exercise a personal privilege was such a " right " as was preserved by the saving clause. A repealing statute which preserves rights contemplates definite and substantial ones which are, or are in the nature of, vested property rights and not mere inchoate personal privileges to which in a legal sense one has no indefeasible vested claim. (*Matter of U. S. Trust Co.*, 175 N. Y. 304.)

This saving clause was probably inserted in an abundance of caution to protect third parties who had dealt

with the alienation of trust properties and had acquired rights therein intermediate adoption of the permissive provision and of the repealing act.

The representatives of the beneficiary complain because the trustee was charged with interest on the trust portion of the proceeds of the real estate at the rate of only four per cent, and also because the court did not charge him with portions of the principal which it is said should have been paid to the beneficiary for his support and maintenance.    These contentions have not been overlooked, but they are so unsupported by the findings which have been made that they do not require any extended discussion. They cannot be sustained.

In my opinion, the order appealed from should be affirmed, without costs.

COLLIN, POUND and ANDREWS, JJ., concur; CARDOZO, J., concurs in result; HOGAN and CRANE, JJ., dissent.

Order affirmed.