### In the Matter of the Estate of JOSEPHINE KERN, Deceased.

Surrogate's Court, New York County, May 28, 1936.

*Pearle & Pearle* [*I. Maurice Wormser* and *Irving Mariash* of counsel], for the petitioners.

*Heymann & Sheldon*, for the executors and trustees.

FOLEY, S. The application to vacate the decree dated June 10, 1935, judicially settling the account of the executors and trustees is denied. In accordance with the arrangement of the attorneys for the parties upon the hearing of this application there was submitted to the surrogate the preliminary question as to the effect and validity of certain instruments signed by the petitioners during the course of the administration of the estate. The petitioners contend that these instruments, wherein they consented to the retention of securities left by the decedent and to the investment of the estate funds in non-legal securities, were void as against public policy. The respondents, the executors and trustees, on the other hand, assert they were valid. If the contentions of the petitioners upon this preliminary question are overruled, a trial and determination as to whether the waivers in the accounting proceedings were executed by the petitioners because of fraud and imposition, becomes unnecessary since the decree upon the accounting sought to be vacated was in that event properly made.

It appears from these instruments that the petitioners (with the exception of Harry Kern, whose status is hereafter discussed) and the other parties interested in the estate specifically requested the executors and trustees " not to sell or dispose of " the shares of stock of the Columbia Bank left by the testator. That company was afterwards merged with the Manufacturers Trust Company. These original requests were executed on October 30, 1920. In the year 1926 the parties again executed written requests for the continued holding of the shares of stock of the Manufacturers Trust Company which had been received in exchange for the stock of the Columbia Bank. Again in the year 1927 the persons inter-

ested in the estate requested in writing the further retention of these shares of stock and specifically agreed to " indemnify and hold harmless " the executors and trustees for such retention. That instrument was dated January 3, 1927, and it recited that the executors and trustees were of the opinion that a sale at the time was desirable. Notwithstanding this fact, the beneficiaries stated in the instrument that they desired that it should not be sold and stated in a most emphatic form " we hereby direct said executors and trustees to hold the said stock as part of the corpus of the trust fund until we shall by unanimous action request the sale thereof."

It further appears that the life tenant and remaindermen arranged for loans on promissory notes, upon certain securities of the estate and for the investment of the proceeds in the exercise of stock rights for the purchase of additional shares of the Manufacturers Trust Company. The agreement providing for the procurement of these loans and the purchase of the new stock of the trust company was executed on July 18, 1927, and likewise contained an agreement of indemnity by the beneficiaries to the executors and trustees " from any and all liability in the premises." There were other instruments of similar tenor subsequently executed by the parties. Finally, on April 10, 1935, after the death of the life tenant and after the remainder had vested, an instrument was signed by the beneficiaries which provided for the distribution of the stock of the Manufacturers Trust Company among the parties proportionately in kind. The decree sought to be vacated provided for and confirmed this form of distribution. It is conceded by counsel for the petitioners that no fraud or imposition entered into the execution of any one of these consents. It is contended by them, however, that the agreements were contrary to public policy and void as against the beneficiaries of the estate. This contention is overruled.

The documentary evidence conclusively establishes that each of the petitioners, with the exception of Harry Kern, executed the consents which they now attempt to repudiate. The petitioner, Harry Kern, has only a $100 interest through the will of his mother, Caroline Kern. As a legatee or distributee of any deceased beneficiary of this estate he has no status to attack the transactions of the executors. (*Matter of Croker*, 144 Misc. 492; *Bushe* v. *Wright*, 118 App. Div. 320; affd., 195 N. Y. 509; *Hart* v. *Goadby*, 138 App. Div. 160.) Such an attack may only be asserted by the executor or other legal representative of the deceased beneficiary's estate. He is estopped, moreover, by the written consents executed by his testatrix and by the written consents of the son,

Isidor, whose share of the remainder vested by intestacy in his mother, Caroline Kern.

I specifically find that the remaining petitioners actively caused, permitted and sanctioned (1) the retention of the investments left by the decedent, (2) the retention of the investments into which the original stock was converted, and (3) that they expressly authorized the purchase of new stock in the exercise of stock rights, and actively demanded the continued holding of such new investments.

It is within the power of a beneficiary, either by individual request of an executor or trustee, or by an agreement between the representatives of the estate and all the persons interested, to consent to the retention of securities left by a testator. The terms of the will or the applicable rule of law may thereby be modified. Where the arrangement is made, or the consent given, without imposition or fraud, the parties consenting are estopped to question the retention of the securities, or the ultimate loss. It was also within the power of the beneficiaries to consent to the investment in securities not authorized as legal investments. Again the parties who thus participated in a technical breach of trust by the executors or trustees are bound by their actions and conduct and are estopped to assert a surcharge in a situation which they have helped to produce. (*Woodbridge* v. *Bockes*, 59 App. Div. 503; affd., 170 N. Y. 596.) Equity will lend them no aid. The principles of estoppel and express acquiescence preclude a surcharge against the representatives of the estate for a loss in such cases. (*Matter of Garvin*, 256 N. Y. 518; *Matter of Packard*, 146 Misc. 65; *Slater* v. *Slater*, 208 App. Div. 567; affd. on opinion below, 240 N. Y. 557; *Matter of Kent*, 146 Misc. 155; affd., 246 App. Div. 604; *Matter of Junkersfeld*, 244 id. 260; *Matter of Hall*, 164 N. Y. 196; *Matter of Niles*, 113 id. 547; *Hine* v. *Hine*, 118 App. Div. 585.) Of course, such agreements are futile against the interests of an infant, incompetent or a non-assenting adult.

It has been recently held by the Court of Appeals in *Delafield* v. *Barret* (270 N. Y. 43) that the investment by a fiduciary of trust funds in non-legal securities is not in contravention of public policy notwithstanding the fact that such investment constitutes a *devastavit*.

The consents and agreements in the pending estate were, therefore, valid and effective against the petitioners. Beneficiaries who expressly consent to the retention of securities or to the making of unauthorized investments cannot complain of results which they directly brought about. They cannot hold the executors for a loss which they compelled. The statement of the Court of Appeals

in *Butterfield* v. *Cowing* (112 N. Y. 486) applies with force to the situation here. It was there said, " it is quite clear that no *cestui que trust* can allege that to be a breach of trust which has been done under his own sanction, whether by previous consent or subsequent ratification. The general rule is that, either concurrence in the act, or acquiescence without original concurrence, will release the trustees."

The decisions dealing with the indestructibility of trusts cited by counsel for the petitioners (*Matter of Wentworth*, 230 N. Y. 176; *Matter of Chaves*, 143 Misc. 868; affd., 239 App. Div. 900) have no application whatsoever to the facts in the present application. Judge LAUGHLIN in the opinion of the Appellate Division in *Woodbridge* v. *Bockes* (59 App. Div. 503, at p. 520) distinguished the authorities which dealt with an express consent by a *cestui* to a breach of trust, from those which hold that a trust may not be abrogated and that a beneficiary's interest is not assignable. Again the Court of Appeals in *Matter of Wentworth* (*supra*) distinguished the rule forbidding the destruction of a trust from those cases in which a court of equity has refused to approve the inequitable attempt of a *cestui* to hold the trustee personally responsible for what the *cestui* himself had asked. In the process of differentiation between the attempted destruction of a trust on the one hand, and the effect of the acquiescence of a beneficiary in a breach of trust by the trustee, Chief Judge HISCOCK cited as examples of the latter class of cases *Woodbridge* v. *Bockes* (170 N. Y. 596); *Sherman* v. *Parish* (53 id. 483); *Butterfield* v. *Cowing* (112 id. 486); *Vohmann* v. *Michel* (185 id. 420), and distinguished these authorities from the conclusion reached in *Matter of Wentworth*.

For the foregoing reasons the trial of the issue as to whether there was fraud in the procurement of the waivers or consents in the accounting proceeding becomes unnecessary.

The prior decree of June 10, 1935, was properly made and the petitioners, because of their conduct in the administration of the estate, are precluded from attacking the validity of the decree.

In view of my conclusion, it is unnecessary to discuss the further question as to whether any loss whatsoever has resulted from the retention or from the new investments in the securities complained of. However, upon this point the computation of the executors and trustees seems to substantiate their claim that not a dollar of loss has resulted in the retention or acquisition of the shares of stock.

Submit order on notice denying the application accordingly.