Richard J. Shay, J.
This is a proceeding for the judicial settlement of the estate of Laura W. Louis, deceased, coupled with a prayer for a determination of the construction and effect of a portion of paragraph “ Second ” of said decedent’s will.*
*723 The involved paragraph reads in part as follows:
‘ ‘ Second. I give, devise and bequeath to my husband Abbaham Louis, if he survives me, the sum of Twenty-five Thousand Dollars ($25,000.00) and
‘ ‘ I give, devise and bequeath to my husband, Abraham Louis, if he survives me, fifty per cent (50%) of my adjusted gross estate, reduced by the amount of the above bequest of $25,000.00 and the value of jointly owned property which may qualify for the marital deduction, balance in trust, nevertheless, with the first trust & deposit company, a banking corporation having its principal office in the City of Syracuse, County of Onondaga and State of New York, and my husband, Abraham Louis, of Cortland, New York, to hold the same and invest and reinvest and to pay or otherwise dispose of the net income and principal as follows:
“ (a) I direct that my husband, Abraham Louis, shall have the right of encroachment of principal of this Trust Fund; and
“(b) I direct that all income from this bequest shall be paid to my husband, Abraham Louis, in quarterly installments; and I direct that my husband, Abraham Louis shall, have the right to appoint all the principal to his estate as 'well as to others at death.”
Petitioners here are Abraham Louis (who is the surviving husband of the deceased, the coexecutor, the cotrustee, and the life tenant of the trust described in paragraph “ Second ”) and Emmett Louis (son of the deceased, coexecutor, beneficiary of a secondary trust, and remainderman or contingent remainder-man). Emmett Louis should also be identified as the “ virtual representative ” of secondary contingent remaindermen (SCPA 315, subd. 3) and no other parties have been cited (Matter of Fuller, 57 Misc 2d 174; Matter of Leyshon, 67 Misc 2d 492).
In essence we find the language of paragraph “Second” creating a common marital deduction trust. The testatrix had the obvious alternative of bequeathing outright to her husband an amount sufficient to allow the maximum marital deduction benefits to her estate. Instead she chose to set up a trust fund and provided her husband with the right to appoint principal at his death. In her instructions to her trustees she directed quarterly payments of income to her husband and that he “ shall have the right of encroachment of principal of this Trust Fund ”.
The executors now petition for a construction of the involved paragraph and urge that because of the given ‘1 right of encroachment ” the life tenant has really an immediate uncon *724 ditional power to invade principal, that, therefore, the creation of such a fund is ‘ ‘ academic and unnecessary ’ ’ and, to save needless detail and expense, the amount which would otherwise be payable to the trustee or cotrustee should be paid directly to the surviving husband. In support of this request there is submitted the consent of the corporate cotrustee and that of the remainderman to this plan.
The initial problem to be faced upon this application is the apparently sacred doctrine of the “ indestructibility ” of testamentary trusts. (Matter of Wentworth, 230 N. Y. 176; Matter of Hanna, 155 Misc. 833; Matter of Morse, 198 Misc. 364; 61 N. Y. Jur., Trusts, i§ 496; Vincent v. Rix, 248 N. Y. 76.) The term ‘ ‘ indestructibility ’ ’, however, seems, in my mind, perhaps as poorly chosen as the term ‘ ‘ encroachment ’ ’ used in this will.
Where there is an unrestricted, unlimited and absolute right to demand all or part of the principal (Matter of Woollard, 295 N. Y. 390; Matter of Nathan, 17 Misc 2d 822) a trust, be it inter vivos or testamentary, can be effectively “ destroyed ”. Common sense would seem to dictate that a trust, which could be destroyed by such a demand on the part of the life tenant after the formality of delivery of its assets to the trustee, could likewise be destroyed prior thereto. This is especially true when the beneficiary, as here, indicates his intention to make such immediate demand. The only real loser in such a situation would be the trustee deprived of commissions and even that objection is eliminated on this proceeding by the submission of that trustee’s consent.
Although no court seems to have ruled directly that such a procedure is possible, I find encouragement in Matter of Bisconti (306 N. Y. 442) which involved an appeal by an executor-trustee who, in a final accounting, had requested authority from the Surrogate to “ deliver the corpus of a trust of the residuary estate to the life beneficiary ”. The Surrogate construed certain language of the involved will as preventing invasion of principal except upon a showing of need on the part of said life beneficiary and, apparently on this ground, denied the application. Upon an application for reconsideration of this decision the Surrogate’s opinion, denying the application, recites his belief that if the trustee had uncontrolled discretion to invade ‘ ‘ there would be no necessity of going through the procedure of setting up the trust.” The Appellate Division unanimously affirmed the Surrogate’s construction, but the Court of Appeals was likewise unanimous in its reversal of the lower courts and remitted the matter to the Surrogate for further proceedings. *725 Unfortunately the Court of Appeals did not outline the further proceedings and did not definitively state that an executor, in the case of a life tenant’s unrestrained power to invade, could directly deliver the corpus of such a fund to the life tenant and thus “directly destroy” the trust. As I read Bisconti, however, I find at least an implication of approval of the executor-trustee’s request to avoid the “academic and unnecessary” step of mechanically setting up the trust fund. I find also the implication that a testamentary trust is not as indestructible as most commentaries would have us believe.
Having decided that “destruction” is possible in general terms, the question of whether this trust may be so treated remains. I hold the ‘ ‘ right of encroachment ’ ’ given this life tenant was intended, by the testatrix, to be absolute and unrestricted. I do not recommend the choice of this phrase for future draftsmen but ‘ ‘ within the four corners ’ ’ of this document (64 N. Y. Jur., Wills, § 579) I find sufficient evidence to demonstrate such intent. Ignoring the dictionary definition (to enter by gradual steps) of encroachment, it is my construction that had the testatrix intended any limitation or discretion on the part of the trustee she would have used the same language used in creating the residuary trust in paragraph ‘ ‘ Tenth ’ ’ and the secondary trust in paragraph “ Second ”. In each instance we find discretionary power vested in the corporate trustee to invade principal “ in the event of sickness of my son Emmett W. Louis and/or members of his family and for any other emergency and/or for the education of my grandchild or grandchildren ’ ’. I think it obvious that, by failing to so limit the ‘ ‘ right of encroachment ”, the testatrix was demonstrating her faith in the good judgment and fairness of her husband and was vesting him with the unfettered power to demand any or all of the principal at any time.
For the reasons herein outlined I will sign the submitted decree granting, in all respects, the requested relief.

 The involved last will and testament was drafted by a person or persons unknown, and not by attorneys appearing in this proceeding on behalf of the petitioners.