(101 App. Div. 83)

## HUYLER v. DOLSON et al.

(Supreme Court, Appellate Division, Second Department. January 20, 1905.)

1. EQUITY—SUIT BY EXECUTOR—TRANSFER OF LIFE POLICY—PARTICIPATION OF EXECUTOR IN FRAUD—EXISTENCE OF DEBTS.

    After insured in a life policy had been induced to assign it to a woman through her fraud, participated in by her husband, she died, and insured sued to set aside the transfer, but he died; the husband being his executor and sole legatee. Held, in the action, continued by the executor, that plaintiff was not precluded from maintaining the action because of his participation in the fraud, in the absence of a showing by defendant that there were no debts, so as to render plaintiff the only one benefiting by a recovery by him.

Appeal from Special Term, Orange County.

Action by John J. Huyler, as executor of the will of Luther R. Marsh, deceased, against Robert H. Dolson and another, as surviving executors of the will of Clarissa J. Huyler, deceased. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

William Vanamee (Vanamee & Vail and Finn & Finn, on the brief), for appellant.

Thomas Watts (John J. Beattie, on the brief), for respondents.

HOOKER, J. This action is a consolidation of four separate actions brought to declare void, for fraud, as many transfers of policies of insurance upon the life of Luther R. Marsh, plaintiff's testator, made by him to Clarissa J. Huyler, testatrix of the defendants. As to the perpetration of the fraud, we are in hearty accord with the views of the learned court below, which remarked at the close of the trial that the evidence is overwhelming that the assignments were obtained by the testatrix of the defendants by the grossest and wickedest of fraud. Among the findings is to be found this: "That the said assignments of said insurance policies on the life of said Luther R. Marsh were procured by said Clarissa J. Huyler by gross fraud and misrepresentation." Clarissa J. Huyler was the wife of the plaintiff, and they lived together.

Luther R. Marsh resided in their household for some years prior to his death. Mrs. Huyler pretended to be a spiritualistic medium, in whom Mr. Marsh believed, and whose every suggestion he followed, so long as she made it appear to come through her from certain spirits. Mrs. Huyler died in April, 1901, and Mr. Marsh thereafter commenced actions, which, with others, were later consolidated into the one at bar, to obtain relief avoiding the transfers by him to her in her lifetime of the policies in question. In December, 1902, Mr. Marsh died, leaving a last will and testament, later duly probated, in and by which he left to John J. Huyler, the widower of Clarissa J. Huyler, his whole estate; making him thereby his sole legatee and sole executor. It does not appear by the evidence of either party whether there are any creditors of the estate of Luther R. Marsh, deceased. The finding that the plaintiff is the only person interested in the recovery herein is wholly unsupported by any evidence of want of creditors of the estate of the deceased Marsh.

The learned trial court found "that the said John J. Huyler was not a believer in Spiritualism, and well knew that the statements and pretensions of his said wife were wholly false, and were made for the purpose of defrauding the said Marsh, and to secure from him, for the benefit of the said Clarissa J. Huyler and her said husband, money and property belonging to said Luther R. Marsh," and that the plaintiff was present when his wife fraudulently obtained the assignments of the policies from Mr. Marsh. And in its remarks at the close of the case it said:

"But the evidence is overwhelming that they were obtained by the grossest and wickedest of frauds. The plaintiff was a party to it—a consenting party to it. He was just as much one of the perpetrators of it as his wife was, and, as he is the person to be benefited by the success of this action, a court of equity washes its hands of it."

The court has said that even though the assignments were obtained by fraud, and had no legal life, and even though the plaintiff sues in his representative capacity as executor under the will of the deceased assignor, yet the action to annul the assignments may not be maintained, for the plaintiff alone will benefit by a judgment in his favor. We hold the view that the burden was upon the defendants to show that the plaintiff alone would be entitled to the benefit of such a judgment, and that the mere evidence of the contents of Mr. Marsh's will that the plaintiff was his sole legatee was not sufficient, and that, because of the failure to sustain that burden, the defendants have not avoided the consequences of the dual capacity of the plaintiff—the one as trustee, and the other as an individual legatee, in the former of which he sues.

Redfield says:

"The whole personal estate of the deceased, both by law and in equity, including debts, accounts, things in action, and every species of personal property, not expressly excepted by the statute, vests in the executor or administrator. He alone is entitled to represent the deceased in respect of his personal property, and he has the same right to the possession of the estate as

the decedent would have if living, and the same remedies for its recovery and protection." Redf. Surr. L. & P. (6th Ed.) § 528.

Dayton says:

"As the representative of the deceased, it has been seen, he [the executor] has the same property in the effects as the principal had when living. He has also the same remedies to recover them."

Chief Judge Follett says:

"An executor, as such, takes the unqualified legal title of all personalty not specially bequeathed, and a qualified legal title to that which is so bequeathed. He holds, not in his own right, but as a trustee, for the benefit (1) of the creditors of the testator; and (2) of those entitled to distribution under the will, or, if not all bequeathed, under the statute of distributions." Blood v. Kane, 130 N. Y. 514, 517, 29 N. E. 994, 15 L. R. A. 490.

It is doubtless true that one may not, in equity, where he alone is to be benefited, obtain to his exclusive use, by invoking a representative capacity, what he would not be entitled to in his individual capacity. This principle seems to underlie the decision in Woodbridge v. Bockes, 170 N. Y. 596, 63 N. E. 362, where, in denying the plaintiff's right to an accounting by the defendant, the court says (page 602, 170 N. Y., page 365, 63 N. E.):

"It is true that the plaintiff is suing in her capacity as trustee alone, but the court will look through the form of the proceeding, at the substance of the matter. It will consider whether the facts disclosed are such as to justify her, in any aspect, in appealing to the exercise of its equitable powers. * * * What right has she to call him to account? By an impersonal right? But that means that, notwithstanding her complicity in the course which has led to this result, if disastrous to the trust, she may be recognized in her assumed office of trustee, and may be accorded a right which personally she has forfeited, morally as well as legally. That cannot be. However separate the office and the individual, a court of equity cannot and should not grant to the former what the incumbent is unfit to be trusted with. Herein is the flaw which deprives the plaintiff's assertion of an equitable right of any force."

The question, then, resolves itself into this: In the absence of proof whether Mr. Marsh left any debts, on whom is the burden cast—on the plaintiff to show that there are creditors, and hence that he is not the sole beneficiary in the estate, or on the defendants to show that there are none, and hence the plaintiff is alone interested? It is said in the Blood Case, supra (page 518, 130 N. Y., page 995, 29 N. E., 15 L. R. A. 490):

"This conclusion only is certain: That, when the executor or administrator ceases to hold the estate in that character, he will hold the same in his own right, and it will be subject to merger."

And again (page 519, 130 N. Y., page 995, 29 N. E., 15 L. R. A. 490):

"It is a universal rule that, when the purpose of a trust has been fully accomplished, the title or estate of the trustee is at an end; and, if he is also entitled to the beneficial estate, the two estates, meeting in the same person, are merged, and he becomes vested in his own right with the entire interest in the property."

Under the principles to which we have adverted, it seems to be taken for granted that one who acts as trustee has a trust, in reality, to perform, and that one who assumes to act as executor is presumed to hold in trust for creditors and legatees. The will

of Mr. Marsh makes it clear that there are no legatees for whom the plaintiff may hold the estate in trust, for he himself is the sole legatee, but not so as to the creditors. Until it is rebutted, the presumption is that there are creditors for whom the executor or administrator holds the personalty of the estate in trust. During the whole progress of the Blood Case, supra, and in the decision in the Court of Appeals itself, this rule seems to have been supposed to exist, for it was not considered that the defendant, sued individually, could offset a debt owing by the plaintiff to the estate of which she was executor and sole legatee until proof was made that all of the debts of her testator had been paid. The defendants have failed to make any showing sufficient to deprive him of the right to maintain the action, which plaintiff possessed by virtue of his representative character, and the judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur; HIRSCHBERG, P. J., in result.