Ethel H. Van Housen Haw, v. Frances M. Haw et al. Homer S. Warren and Charlotte Van Housen Warren, Individually and as Administrators of Estate of Beach T. Van Housen, Deceased, Appellees.

Gen. No. 39,724.

Opinion filed May 16, 1938.   Petition

for rehearing of Frances M. Haw and Walter R. McFarland as successor trustee was stricken for impertinence June 3, 1938 and the petition for rehearing of Robert J. Hilliard, guardian *ad litem* for James Haw and Eddie Haw, Jr., was denied June 3, 1938.

ROBERT J. HILLIARD, of Chicago, for appellant James Haw and Eddie Haw, Jr.

L. T. ARTHUR, of Chicago, for appellant Frances H. Haw.

CONCANNON, DILLON, BOSTELMAN & SNOOK, of Chicago, for appellants Ethel H. Van Housen Haw and Walter R. McFarland.

THOMAS MARSHALL, of Chicago, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Ethel H. Van Housen Haw, on August 8, 1932, filed her bill in chancery against her husband, A. E. Haw, her daughter, Frances M. Haw, James Haw and Eddie Haw, Jr. (her sons), Homer S. Warren and Charlotte Van Housen Warren, individually and as administrators of the estate of Beach T. Van Housen, deceased, the Chicago Title & Trust Co., as successor in trust named in a trust indenture dated February 26, 1912, between Ethel Van Housen Haw and Beach T. Van Housen; the bill prayed that a successor trustee be appointed in lieu of Beach T. Van Housen, deceased, and the Chicago Title & Trust Co. named as successor trustee, and that Homer S. Warren and Charlotte Van Housen Warren, as administrators of the estate of Beach T. Van Housen, deceased, be required to render an account of the trust estate. All parties answered except the Chicago Title & Trust Co., which declined to act, and it was defaulted. No objection was made to the prayer for relief and a decree was entered ap-

pointing Walter R. McFarland as successor trustee and ordering the defendants Warren to file an account. Afterward the account was filed, to which all the parties filed objections, and after a hearing a decree was entered that the Warrens, as administrators of the estate of Beach T. Van Housen, deceased, pay to McFarland, as successor trustee, $3,901.36, in due course of administration of the estate as a claim of the 5th class. Twenty-five days after, January 29, 1937, the court, on complainants' motion, amended the decree, substituting various figures in lieu of those in the decree. One of the substitutions was that the Warrens, as administrators, were held liable for $4,491.72, to be paid in due course of the administration of the estate as a claim of the 5th class.

April 28, 1937, defendants Frances M. Haw, James Haw and Eddie Haw, Jr., filed their notice of appeal. On the same day the complainant, Ethel Van Housen Haw, filed her notice, designated a cross appeal, and on the same day McFarland, as successor trustee, filed his notice, designated as a cross appeal.

The record discloses that on February 26, 1912, complainant, Ethel Van Housen Haw of Seattle, Washington, entered into an agreement with Beach T. Van Housen of Chicago. Whether these parties were related is not disclosed. The agreement recited that Mrs. Haw had received in excess of $20,000 cash, personal property and certain real estate located in Chicago, from the estate of John H. Van Housen, deceased (describing the real estate); that Beach T. Van Housen had received $20,000 in cash and personal property from the estate of Frances M. Van Housen, deceased; that the property mentioned as belonging to Mrs. Haw was the only property she possessed; that the personal property was evidenced by a note for $15,000 executed by Fuller and wife, secured by a trust deed on property in Cook county; that at that time plaintiff had one

child, viz., the defendant Frances; that Mrs. Haw was desirous of placing all her property in trust for the benefit of her child and any other child or children that might be born to her; thereupon, by agreement, her property was conveyed to Beach T. Van Housen in trust, to collect the rents, issues, profits, etc., and after expenses were deducted for the repair of buildings, etc., he was to pay the residue to Mrs. Haw on the first of each month during her natural life. The trustee was given authority to keep the buildings in repair, etc., borrow money for replacing the buildings, and execute a mortgage on the property; that the trustee might vary, alter, or change the investment at any time or sell and convey any or all of the property as in his judgment he might deem best; re-invest the proceeds, etc. Upon the death of Mrs. Haw the trust was to be determined and the property turned over to Mrs. Haw's children and divided equally. The Title & Trust Co. was appointed successor trustee, but in case it refused to act a successor might be appointed by a proper court of Cook county. At the time of the execution of the trust indenture Mrs. Haw lived with her husband and child in Seattle, Washington, and some time thereafter two other children were born to Mr. and Mrs. Haw. The eldest daughter, Frances, was married prior to the trial. The other two children were minors at the time of the beginning of the suit, and a guardian *ad litem* was appointed for them.

Upon the execution of the agreement Beach T. Van Housen entered upon the discharge of his duties, collected the $15,000 note, managed the property, which was on Roosevelt road, Chicago, until he died intestate about August 1, 1931; that defendants Homer S. Warren and his wife Charlotte Warren were appointed administrators of his estate by the probate court of Cook county.

September 13, 1919, the trustee, Beach T. Van Housen purchased a house and lot in Seattle, Washington, for $5,750, as a home for complainant in which she and her family lived from that time until the time of the trial. After the decree was entered in the instant case, appointing the successor trustee, the Warrens conveyed the house in Seattle and the building on Roosevelt road to the successor trustee. Beach T. Van Housen, throughout the period that he acted as trustee, made remittances to Mrs. Haw aggregating several thousands of dollars more than he had received from the trust estate. The account submitted by the Warrens showed that the trustee, Van Housen, during the period he acted as such, from 1912 to 1931, charged himself with 5½ per cent on any property he held belonging to Mrs. Haw from November, 1913, to December, 1924, and for the balance of the time at the rate of 6 per cent per annum, and it seems to be conceded that after allowing such interest he remitted to Mrs. Haw and expended more than $8,800 in excess of what he had received from the trust estate—this too, without making any charge whatever for his services.

Counsel for Mrs. Haw and the other appealing parties say in their brief that the court finds by the decree "that the Trustee paid more money to the complainant than the net income of the trust; that such excess payments were made without authority and contrary to law and the Trustee was not entitled to a credit in his accounting for such excess payments and was not entitled to recover them from the complainant, but that the Trustee was entitled to a credit in the amount of $5,325.55 for the rental value of the Seattle property"; that the question of the rental value of the Seattle property was in no wise raised by the pleading or by counsel on the hearing, but was raised by the court. On this appeal the only question raised by the appealing parties, who will hereafter be referred to

as the Haws, is the allowance of this item. On the other side, counsel for the Warrens say that since the undisputed evidence shows that the trustee, Van Housen, overpaid Ethel Haw "to the amount of $7,313.07 and more to keep Ethel Haw and her family in food and clothing," which payments were made on account of letters and telegrams from Mrs. Haw to the trustee imploring and demanding money, the estate of the deceased trustee ought not now be called upon by Mrs. Haw or her children to again pay the money, "upon the theory the trustee had no legal right to pay to her this money to keep her and her family alive and that it was not 'income' paid to her."

The record discloses that from February, 1916, until the trustee died in 1931, Mrs. Haw was continually demanding money from him. Numerous telegrams are in the record, practically every one of which was sent "collect," demanding money to support her family, including her husband who was sometimes ill and out of work. From some of the telegrams we quote: February 29, 1916,—"Wire twenty-five today must have same. Ethel." July 3, 1917,—"Ed [her husband] used more money must have twenty-five to save lawsuit wire it without fail." December 12, 1918,— "Wire thirty today must have it am sick with flu." January 27, 1927,—"Wire me twenty-five Friday check not received yet Ed been out of work since January . . . must get coal to-day without fail . . . " March 24, 1927,—"Wire twenty-five today birthday tomorrow check not received yet don't deduct until next month." April 14, 1927,—"Ed not working since January without funds wire thirty today don't deduct April check." May 3, 1927,— "Please wire money requested yesterday absolutely necessary by noon to-day." June 14, 1927,—"Wire thirty-five today baby much better expenses terrific." June 23, 1927,— "Wire forty today baby developed pneumonia Ed not

paid until first writing fully today." July 22, 1927,—"Wire thirty-five today writing long letter feeling better baby well." August 23, 1927,—"Wire forty today check not received this month ordered from home to save nervous breakdown." November 29, 1927,—"Wire thirty-five today don't deduct December check Helen improving." May 10, 1928,—"Wire balance May income today baby had setback improving again." May 24, 1928,—"Baby much worse need immediate funds wire forty today." June 26, 1928,—"Must have hundred dollars before four today save garnishee and Ed's position wire immediately." August 28, 1928,—"Wire twenty-five today must have to prepare children for school." October 15, 1928,—"Wire fifteen today Frances birthday tomorrow wrote fifteen page letter yesterday." November 13, 1928,—"Wire twenty-five today have been very ill mother writing." March 7, 1929,—"Wire fifteen today do not deduct March check more than twenty-five." August 30, 1929, —"Check not received must have money to start children to school send twenty-five today without fail." October 10, 1929, — "Frances to be married wire twenty-five today without fail will write particulars." This last wire was replied to the same day by the trustee's assistant as follows: "No money as I wrote you Beach [meaning Trustee] will return Monday will remit then." On the same day, "Still insist twenty-five be wired today absolutely necessary wire don't fail." October 15, 1929,—"Wire twenty-five today absolutely necessary Frances married Saturday writing particulars." December 19, 1929,—"Insist upon twenty-five being wired today check not received must have it." Many other telegrams are in the record to which we have not referred. May 21, 1930, Beach's employee in Chicago wrote Mrs. Haw in Seattle, advising her he had received her telegram and had wired $25,—"I have written you on several occasions ex-

plaining to you the rental conditions and also the sad condition of Mr. Van Housen but in some way this does not seem to have any effect on you whatever and you are forcing me to send money to you out of my own funds. Under the existing conditions I think your action is anything but gracious, and in the future I trust you will not send in any more telegrams for money as I will send you money just as soon as I can collect it and find Mr. Van Housen in a condition to sign checks.'' But this letter seemed to have no effect on Mrs. Haw; she continued her telegrams demanding money and on June 16, 1930, the trustee's representative again wrote Mrs. Haw that he was surprised to receive her wire requesting money, saying, ''as I have said to you before about Mr. Van Housen and also the rental conditions being so bad. The fact of the matter is I have not collected any rents I am sending you.'' And he asked her to stop sending telegrams; but Mrs. Haw continued to wire for money. August 29, 1930,—''Wire twenty-five today must buy children's school clothes don't fail.'' September 15, 1930, —''Wire twenty-five before noon today absolutely necessary Ed not working.'' December 12, 1930,—''Wire twenty-five today must start Christmas shopping am without money.'' January 16, 1931,—''Wire twenty today balance due dress for installation tonight don't fail.'' June 16, 1931,—''Am without light and phone must wire money today without fail.''

Counsel for the Haws say in their brief that the court erred in charging them with the rental value of the Seattle property from the time it was purchased by the trustee and occupied by them, but we think it would serve no useful purpose to discuss this question. Counsel for the Warrens say that ''they are entitled to credit for the entire overpayment. The court did allow $5,325.55 but called it rental value. The

credit should have been allowed for the entire overpayment of $7,313.07.

"In addition the lower court required appellees to deliver and pay under order of December 18, 1933, the sum of $1,501.79, making a total overpayment of $8,814.86." Counsel say that the overpayment was for the support and maintenance of Mrs. Haw and her entire family, and the telegrams, some of which we have quoted, demonstrate this to be the fact; there is no contention to the contrary. And counsel for the Warrens continuing say: "It is contrary to equity and good conscience for her to demand and receive money from the trustee," and now contend that because the money was not from income the trustee should receive no credit; that "She obtained the money for the support of herself and her family and she is estopped by her own conduct and cannot demand a repayment of the money." We think this contention must be sustained. The claim of Mrs. Haw now made shocks the conscience of the court, and, as said in *Woodbridge v. Bockes,* 170 N. Y. 599–600, where a similar question was involved, "Doubtless, the general rule in equity would require a trustee to account to his *cestui que trust* in a proper case, would require of him, in laying down his trust, . . . to render an account of his management. . . . The application of the rule, however, is complicated with such extraordinary facts, in the present case, as to make its enforcement questionable. The proceeding is in a court of equity and whether it will exercise its equitable jurisdiction, and grant the relief prayed for, will depend upon the facts, as well as upon the application of legal principles. . . .

"As to the plaintiff, there are several considerations which render her situation, as a complainant in the action, one which neither appeals to the conscience of a court of equity, nor inclines it to strain any rule of law in her favor." (p. 602): "the court will look

through the form of the proceeding, at the substance of the matter. It will consider whether the facts disclosed are such as to justify her, in any aspect, in appealing to the exercise of its equitable powers. . . . She is, herself, liable to the trust for the trust properties which she has received and used. . . . Directly, or indirectly, she received the whole of it, . . . '' (p. 603): ''The plaintiff's demand is repugnant to equity.'' See also *Harsell v. Townsend*, 123 N. Y. S. 787; *Copeland v. Bruning*, 44 Ind. App. 405, which quotes from *Woodbridge v. Bockes*, 170 N. Y. 596; *Equitable Trust Co. v. Miller*, 185 N. Y. S. 661; *Cole v. Hawley*, 95 Conn. 587.

But counsel for the Haws say that minor defendants could not be bound by the action of their mother in spending more than the income of her property; that the duty to support minor children is on the father and not on the mother. In the instant case, however, the uncontradicted evidence shows that the father was ill and out of work a great part of the time and that the money sent by the trustee to Mrs. Haw was used to buy coal and clothing for the children so they could go to school—necessaries. In these circumstances a court of conscience, as stated by the court of appeals in New York in the *Woodbridge* case, will examine the extraordinary facts to determine whether it will enforce the rule requiring a trustee to account where it would make the ''enforcement'' of the rule ''questionable.'' But counsel for the Haws also say that since the Warrens did not file notice of a cross-bill they are in no position to question any part of the decree. But we think that procedure is not applicable here because the question of the correctness of the entire account is before us on the appeal prosecuted by Mrs. Haw, the children and the successor in trust. The entire account must be considered.

For the reasons stated the decree of the superior court of Cook county is reversed and the cause is remanded with directions to enter a decree finding that the Warrens, as administrators of the estate of Beach T. Van Housen, deceased, are in no way liable. Sec. 92, ch. 110, Ill. Rev. Stat. 1937 [§ 216; Jones Ill. Stats. Ann. 104.092].

*Reversed and remanded with directions.*

McSURELY and MATCHETT, JJ., concur.